UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHAWN THOMAS<br><br>THE TABLETOP ADVENTURE, LLC<br>An Iowa Limited Liability Company<br><br>Plaintiffs,<br><br>v.<br><br>LEYLINE PUBLISHING LLC,<br>A Texas Limited Liability Company, d.b.a.<br>Geek Therapeutics,<br><br>LEYLINE EDUCATION PLLC,<br>A Texas Professional Limited Liability<br>Company,<br><br>DR ANTHONY BEAN, Ph.D.,<br><br>ALICIA FIGLIUOLO<br><br>Defendants. | Case No.:  3:24-cv-3061<br><br>COMPLAINT AND<br>JURY DEMAND |

Plaintiffs in the above-captioned matter, Shawn Thomas ("Thomas") and The Tabletop Adventure, LLC ("TableTop Adventure"; together with Thomas, "Plaintiffs"), submit the following as their Complaint against Defendants Geek Therapeutics, a d.b.a., Leyline Publishing LLC ("Leyline Publishing"), Leyline Education PLLC ("Leyline Education"), Dr. Anthony Bean ("Dr. Bean"), and Alicia Figliuolo ("Alicia"; together with Dr. Bean, Leyline Publishing and Leyline Education, "Defendants") herein.

**Nature of the Case**

1.     This action involves numerous claims relating to Plaintiffs' development of a tabletop game and certain copyrights, trademarks, and other rights related thereto that Defendants have misappropriated, infringed and continue to infringe, and are improperly utilizing. Plaintiffs seek an injunction to compel Defendants to cease all sales, marketing and distribution of Plaintiff's copyrighted and trademarked works, to cease defamatory communication, to pay damages for Defendants' trademark and copyright infringement, and to pay damages for Defendants' defamatory comments.

**Parties**

2.     Plaintiff, The TableTop Adventure, LLC, is an Iowa limited liability company with the principal place of business located at 3901 NW Windbrooke Ct., Ankeny, IA 50023.

3.     Shawn Thomas is the owner and sole member of TableTop Adventure, and an Iowa resident.

4.     On information and belief, Defendant Leyline Publishing LLC is a Texas limited liability company with the principal place of business located at 1650 W Rosedale St Ste 305, Fort Worth, TX 76104.

5.     On information and belief, Defendant Leyline Education PLLC is a Texas professional limited liability company with the principal place of business located at 1650 W Rosedale St Ste 305, Fort Worth, TX 76104.

6.     Leyline Education PLLC does business under the assumed name Geek Therapeutics ("GT").

7.     On information and belief, Defendant Dr. Anthony Bean, Ph.D., is a Texas resident residing at 6925 Tumbling Trl, Fort Worth, TX 76116.

8.      Dr. Bean is a licensed psychologist, educator, and an owner of both Leyline Publishing LLC and Leyline Education PLLC, as well as other businesses.

9.      Defendant Dr. Bean has the right and ability to supervise the activities of Defendants Leyline Publishing and Leyline Education and a direct financial interest in the limited liability companies.

10.     On information and belief, Defendant Alicia Figliuolo is an employee of Leyline Education PLLC a Virginia resident residing at 103 Apothecary Pl, Williamsburg, VA 23185-6305, but who claims she is domiciled in Texas.

## Jurisdiction and Venue

11.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§1331, 1332, 1338, and 1367.

12.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

## Factual Background

### A.  Development of The Realms of Kymoria ("RoK"), a Tabletop Role Playing Game and Formation of TableTop Adventure

13.     Plaintiff Shawn Thomas is an avid enthusiast of tabletop role playing games ("TTRPG"), such as Dungeons and Dragons, that are played in a personal setting, often around a table with other individuals.  Mr. Thomas is also an enthusiastic supporter of using such tools to create a welcoming environment for individuals who have anxiety or other mental disorders. The belief held by Mr. Thomas is that, by role playing in such a fictional setting, individuals can focus on exploring new concepts and perspectives, building up their confidence, and even developing applicable skill sets that carry over into real-life day-to-day situations.

3

14.     In 2018, Mr. Thomas began developing a fictional world, characters, and stories specifically intended to create a supportive game-play environment.  He ultimately produced graphical maps, stories in the form of written prose, graphical depictions of the characters from the stories, and graphical character sheets used during the course of the gameplay.

15.     In 2021, Mr. Thomas formally adopted the name "Realms of Kymoria" (RoK) and established The TableTop Adventure, LLC to hold the copyrights and trademarks and to market, license, and distribute the intellectual property associated with the game. Mr. Thomas is the sole founder, member, and manager of The TableTop Adventure, LLC.

16.     Mr. Thomas's work represents a culmination of years of development, creating a fictional world enriched with unique locations, cultures, and characters. These materials were designed to foster an immersive and therapeutic gaming experience.

**B.  Plaintiffs and Defendants' Business Dealings**

17.     In 2021, Mr. Thomas, in his role as the member of The TableTop Adventure, LLC, acquired the Therapeutic Game Master Certification from GT.  This certification purportedly demonstrates that the holder knows how to host tabletop role playing games in a therapeutic environment.  According to the GT website, there are Certified Therapeutic Game Masters offering services in affiliation with GT across the USA and in 25 other countries.

18.     In 2021, a request was made by a GT staff member, to the Certified Therapeutic Game Master Community seeking volunteers to participate in a podcast.  Mr. Thomas responded to the second request made by Alicia expressing interest in participating.  While talking to Alicia, he shared that he was developing a supportive tabletop game.  Alicia showed interest in Plaintiffs' game and arranged a meeting between Dr. Anthony Bean, Mr. Thomas, and Alice in the beginning of 2022.

19.     Mr. Thomas, Alicia, and Dr. Bean met virtually to discuss bringing Mr. Thomas on as a consultant to support the overhaul of their Therapeutic Game Master Certification program. Additionally, the discussion involved Alicia's and Dr. Bean's interest in purchasing the rights to use Mr. Thomas's business model for The TableTop Adventure (excluding customers, content, materials, and intellectual property) and acting as a publisher for the RoK TTRPG.

20.     Meetings continued, both by phone, by email, and through an online chat tool to discuss a potential agreement for distribution and collaboration related to the Realms of Kymoria TTRPG.  While Mr. Thomas was interested, he continuously expressed reservations about losing control of the intellectual property associated with the RoK.

21.     Dr. Bean encouraged Mr. Thomas to draft a license agreement reflecting the discussed terms, including provisions to ensure that all intellectual property rights would remain with Mr. Thomas and The TableTop Adventure, LLC.

22.     Dr. Bean expressed interest in a clause that would grant exclusive rights to GT for distribution and related activities. Dr. Bean and Mr. Thomas agreed to a provision that would allow for a future opportunity for him to purchase the entirety of the Kymoria intellectual property.

23.     During this time, Mr. Thomas continued refining the RoK material to prepare it for production and distribution with Dr. Bean through GT. In his capacity as the sole member of TableTop, Mr. Thomas shared updated content and materials with the GT staff for review and occasional feedback on specific elements, including marketing content and an example of "notes" for therapeutic encounters. These efforts were entirely his own, and the feedback provided by GT staff did not influence the creation or ownership of the material. Later, Mr.

Thomas removed the example of "notes" when he took steps to protect his intellectual property, including filing for copyright of his literary works.

24.     On February 25, 2022, Mr. Thomas signed a confidentiality agreement with GT as part of his engagement as a consultant to assist with GT's overhaul of the Therapeutic Game Master Certification program, along with discussions about other potential collaborations. See Exhibit 10.

25.     On March 7, 2022, Dr. Bean, in his capacity as a member of Leyline Publishing LLC, signed a draft of the preliminary agreement to clarify the licensing, distribution, and payment arrangements between Leyline Publishing LLC and The TableTop Adventure, LLC.

26.     However, Mr. Thomas did not sign that draft.

27.     The draft of the preliminary agreement that Dr. Bean signed contained terms relating to the duties for all parties, and a clear statement that "A discussion in the future to purchase the entirety of the Kymoria IP will occur at a later date… [u]ntil that document is produced and signed then the Kymoria IP and all related content is owned by me, Shawn Thomas (The TableTop Adventure)." See Exhibit 5, which is a copy of the preliminary agreement, signed by Dr. Bean on March 7, 2022.

28.     That draft also called for a payment of $50,000 to be paid by Leyline Publishing to Mr. Thomas in quarterly installments beginning the 1st quarter of 2023.  Notably, Defendants made no such payments.

29.     Discussions about a complete agreement continued with emails exchanging as late as July 29, 2022.

30.     Despite the discussions between the parties, no final written agreement was executed.

31.     Throughout this period, Mr. Thomas provided consulting services to GT as a "Creative Director" to support the overhaul of their Therapeutic Game Master Certification program. These consulting hours were expected to be compensated separately, but GT later mischaracterized this work as an "advance" on future payments, a characterization Mr. Thomas rejected.

32.     Mr. Thomas also provided "guest game master" services for various cohorts in 2022, invoiced for the hours worked, and received payment for these services.

33.     During the negotiation phase and continuing until February 2023, Mr. Thomas worked on finalizing the content of the game, collaborating with Dr. Bean, Alicia Figliuolo, and others on the GT team, as well as engaging with influencers and artists to support the project.

34.     Mr. Thomas also attended events to help promote GT products and services and to announce the upcoming release of the RoK in September 2022, at the PAX Unplugged ("Penny Arcade Expo") trade show in Philadelphia. Mr. Thomas was not paid for these efforts, despite being told during a call that his hours were being tracked and that payments would be handled accordingly. While Mr. Thomas did not submit an invoice for these hours, this understanding was based on the representation made during the call.

35.     Despite the terms of the preliminary agreement which preserved for Mr. Thomas and TableTop all intellectual property rights to the game, on October 11, 2022, Leyline Educational LLC, through counsel, filed for a 1(b) Intent to Use trademark for the name "REALMS OF KYMORIA" in international classes 28, 41, and 42 (U.S. Serial No. 97627742), attached as Exhibit 6.

**C.  Changes in the Open Gaming License Necessitated Changes in RoK; Led to Dispute**

36.    On or about December 21, 2022, information was leaked to the Internet showing that Wizards of the Coast, Inc. ("WotC") intended to make sweeping changes to the Open Gaming License ("OGL"), specifically targeting version 1.0a.

37.    The OGL permits third parties to create gaming content using rules compatible with Dungeons and Dragons, the well-known tabletop gaming system which is owned and distributed by WotC.  Many third parties use components created by WotC and licensed under the OGL to create games that are familiar to fans, allowing a great deal of interoperability between one game and another.

38.    The leaked change showed that the changes to the OGL, proposed as OGL version 1.1, would require third-party developers to register their third-party-developed games with WotC and grant to WotC a "non exclusive, perpetual, irrevocable, worldwide, sub-licensable, royalty-free license to use that content for any purpose."

39.    This caused an uproar in the tabletop gaming community since many third-party game developers have created business models around "5e compatible" content, where "5e compatible" means material based on the OGL licensed "5th edition" rulebook of Dungeons and Dragons. *See* Exhibit 2.

40.    Mr. Thomas expressed deep concern to Dr. Bean and others on the GT team over this change because the RoK, still unpublished to the public, was intended to be 5e compatible and, in the then-current form, would be dependent on and subject to the OGL. This leaked license change, if it became effective, indicated that Plaintiffs would be required to grant a perpetual license of the RoK content to WotC, which Plaintiffs did not wish to do as the changes appeared to undermine the assurances of ownership and control that developers had relied on under OGL v1.0a.

41.    Mr. Thomas and Dr. Bean shared similar concerns, though Dr. Bean was particularly focused on potential revenue loss related to the introduction of royalties.

**D.  Defendants Press on with Marketing RoK as the Parties' Business Relations Sour**

42.    Despite **not** having a finalized licensing agreement and concerns about WotC's licensing changes, GT had begun marketing efforts for the RoK as early as 2022, including creating a Kickstarter page that remains pending.

43.    While GT created a Kickstarter page for the RoK that still exists but was never launched, they ultimately used Backerkit to launch the campaign. During this process, GT misrepresented the status of the intellectual property conflict to Backerkit and potential backers while we were seeking relief through the Iowa court system.

44.    Crowdfunding platforms, such as Backerkit and Kickstarter, are marketing and sales tools designed to engage early supporters of a product by offering unique merchandise, package pricing, and other incentives in exchange for backing a not-yet-released product.

45.    By late summer 2022, GT was tentatively marketing the game by selling pre-orders of a stuffed animal made in the likeness of a creature from Mr. Thomas's setting. Marketing efforts ramped up significantly in November 2022, culminating in heavy promotion during the PAX Unplugged convention in December. These efforts continued into 2023, with GT collecting pre-orders for the kit through conventions and their pre-order website and eventually launching a new campaign on Backerkit, all while the legal process was ongoing.

46.    Discussions on a satisfactory solution to removing 5e compatibility broke down in February of 2023 and each party sought counsel. It was mutually agreed that the project would need to be terminated. However, during this time, GT made multiple attempts to pressure Mr. Thomas into accepting unfavorable terms, including making exaggerated claims, omitting key

provisions from the unfinished original contract, and presenting agreements that failed to address the intellectual property ownership and control.

47.    On April 19, 2023, Plaintiffs, through counsel, sent a demand letter to Defendants' counsel requiring an immediate cease of all efforts to reproduce, distribute, modify, publish, or display any part of the RoK product, to delete or destroy all copies of the RoK IP in Defendants' possession, and to assign the trademark application that Defendants filed in 2022 to Mr. Thomas.

48.    GT and Dr. Bean ultimately abandoned the *Realms of Kymoria* trademark application after repeatedly delaying the process and claimed that they were fully within their rights to publish the material. During the public contestation period, Defendants chose to abandon the trademark rather than assigning it to Mr. Thomas, which delayed Mr. Thomas's ability to file for the trademark himself.

49.    However, Defendants still possess copies of the RoK material in its 5e compatible version. Despite the abandonment of the *Realms of Kymoria* trademark application, GT continued to use the name *Realms of Kymoria* in their marketing efforts.

50.    Plaintiff The TableTop Adventure received copyright registrations for RoK material as shown in Exhibit 7, hereinafter "Works."

### E.  Continued Intellectual Property Infringement

51.    Plaintiffs became aware that Defendants did not comply with the terms of the demand and continued to market the RoK IP, announcing plans to distribute and sell the game through the Backerkit campaign in late February, 2024.  Hundreds of people have pre-registered to back the game. See Exhibit 3, a website launched approximately January 3, 2024, showing an imminent launch date and hundreds who have subscribed.

52.     Defendants have created websites and merchandise to promote and sell the game that infringes on Plaintiff's intellectual property rights. Exhibits 3, 8, 9.

53.     Defendants have falsified emails to people interested in Realms of Kymoria by drafting and sending emails purportedly from Mr. Thomas encouraging recipients to support the upcoming Kickstarter campaign. Exhibit 4.

<u>**Count I**</u>
<u>**Copyright Infringement**</u>

54.     Plaintiffs incorporate by reference the preceding paragraphs.

55.     Plaintiff TableTop Adventure owns valid copyrights in the Works at issue in this case, a non-exhaustive list of which appears in Exhibit 7.

56.     Plaintiff TableTop registered or preregistered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411, shown in Exhibit 7.

57.     Defendants copied, displayed, distributed, and prepared derivative works based upon the Works at issue without Plaintiffs' authorization in violation of 17 U.S.C. § 501, as shown in Exhibits 8 and 9.

58.     Defendants continue to copy, display, distribute, and prepare derivatives based upon the Works at issue without Plaintiffs' authorization in violation of 17 U.S.C. § 501, as shown in Exhibits 8 and 9.

59.     Defendants have prepared an online marketplace for the sale and display of copies of the Works at issue and placed a countdown on the marketplace showing that the Works at issue will be offered for sale in a matter of weeks, as shown in Exhibit 3.

60.     Defendants have advertised through the Internet that they will be offering for sale copies of the Works at issue, as shown in Exhibit 4.

61.     Defendants knew that Plaintiff TableTop was the sole owner of the Works at issue, that Plaintiffs clearly expressed to Defendants through counsel that Plaintiffs objected to Defendants' intent to copy, display, distribute, and prepare derivative works based upon the Works at issue, and that these acts are willful.

62.     Plaintiffs previously filed a lawsuit against Defendants in the United States District Court for the Southern District of Iowa, seeking relief for claims substantially similar to those asserted herein. In that prior proceeding, the Court dismissed the case due to lack of personal jurisdiction and improper venue, rather than on the merits of Plaintiffs' claims.

63.     Following the dismissal, Defendants publicly misrepresented the nature of the Court's ruling by announcing that Plaintiffs had "lost" the case, implying that Plaintiffs' claims were adjudicated on their merits, when in fact they were dismissed solely on jurisdictional grounds.

64.     Notwithstanding the prior dismissal, Defendants have continued to unlawfully copy, display, distribute, and prepare derivative works based upon the Works at issue without authorization from Plaintiffs, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 501.

65.     Defendants' ongoing acts of infringement constitute a violation of 17 U.S.C. § 501, which protects the exclusive rights of copyright holders. By continuing to engage in unauthorized uses of the Works, Defendants are directly infringing Plaintiffs' rights under the Copyright Act.

66.     Defendants' acts of infringement have caused pecuniary loss to Plaintiff TableTop adventure in the form of lost profits, legal expenses, and interference with Plaintiffs' business operations.

67.    Defendants have released high quality copies of Plaintiffs' copyrighted material on the internet in a form that anyone, including search engines and automated tools, may download, and such actions have caused irreparable harm to Plaintiffs.

**Count II**
**Secondary Infringement**

68.    Plaintiffs incorporate by reference the preceding paragraphs.

69.    Defendants Leyline Publishing, Leyline Education, and Dr. Bean ("Inducers") have induced Defendant Alicia Figliuolo to purportedly create derivative works based upon Plaintiff TableTop Adventure's copyrighted material and Inducers have profited from Alicia's infringing actions.

70.    Alicia created artwork referred to as "concept art" and website content that incorporates Plaintiffs' copyrighted material.

71.    The "concept art" that Alicia created was a "derivative work" under Under 17 U.S.C. § 101 which is defined as a work that is based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A derivative work includes any work that incorporates significant elements of the original copyrighted work in a way that substantially transforms or adds new expression to it.

72.    Inducers, without authorization from Plaintiffs, knowingly and intentionally induced or encouraged Alicia to create a derivative work based on Plaintiffs' copyrighted material, the Works, without Plaintiffs' permission.

73.    Inducers directed and encouraged Alicia to create, alter, or transform the Works in a manner that resulted in an unauthorized derivative work. Such actions violate Plaintiffs'

exclusive rights under 17 U.S.C. § 106, which grants copyright owners the exclusive right to prepare derivative works based on their original creations.

74.     Defendants acted with full knowledge that their actions would lead to the unauthorized creation of a derivative work, thereby infringing Plaintiffs' copyright and interfering with Plaintiffs' exclusive rights under the Copyright Act.

75.     Alicia knew that Plaintiffs owned the copyright to the copyrighted material used to create the concept art and website content.

76.     Alicia's concept art and website content was created to enable Inducers to publish a marketplace to sell and display copies of Plaintiffs' copyrighted content.

77.     Inducers have used Alicia's concept art and website content to copy and promote the sale and copying of Plaintiffs' copyrighted content.

78.     Such uses of Plaintiffs' copyrighted content have caused pecuniary loss to Plaintiff TableTop in the form of lost profits, legal expenses, and interference with Plaintiffs' business operations.

## Count III
## Trademark Infringement

79.     Plaintiffs incorporate by reference the preceding paragraphs.

80.     Plaintiffs have used the term "Realms of Kymoria" ("Mark") in commerce since 2021.

81.     Defendants have used in commerce the term "Realms of Kymoria," a trademark owned by Plaintiffs, to promote the sale of Defendants' products and services in violation of 15 U.S.C. §1125(a)(1).

82.     Such acts are likely to cause confusion, mistake, or deceive as to an affiliation or association of Plaintiffs with Defendants' activities.

83.    Plaintiffs have been damaged by Defendants' acts when consumers pre-registered to purchase RoK material from Defendants and search engines diverted consumers to Defendants website instead of Plaintiffs when searching for Mark.

84.    The harm caused to Plaintiff has been irreparable by confusing consumers into entering into business transactions with Defendant for infringing content.

## Count IV
## Libel and Slander

85.    Plaintiffs incorporate by reference the preceding paragraphs.

86.    Defendants made a materially false statement to the public pertaining to Mr. Thomas's involvement with GT's Kickstarter campaign by sending an email addressed purportedly from Mr. Thomas, Exhibit 4. This statement was false because Mr. Thomas has withdrawn all relationships with Defendants and demanded Defendants to cease using Plaintiffs' intellectual property.

87.    Such statements have harmed Mr. Thomas and TableTop by confusing consumers and inducing consumers to enter into financial transactions with Defendants. Furthermore, it has confused consumers over Mr. Thomas's involvement with Defendants.

88.    Defendant's false statements were made willfully.

89.    The intent of such statements was to induce the public to purchase infringing copyrighted material owned by Plaintiffs. Furthermore, Defendants sought positive publicity through association with Mr. Thomas and the RoK brand.

90.    Hundreds of people responded by pledging support for Defendant's marketing campaign.  Exhibit 3.

## Count V

**Invasion of Privacy: Appropriation of Name or Likeness**

91.     Plaintiffs incorporate by reference the preceding paragraphs.

92.     Defendants used Mr. Thomas's name and photo on Defendants' website and Mr. Thomas's name in the emails sent to the public. Exhibit 4 & 9.

93.     Defendants used Mr. Thomas's name, photo, or other personal attributes without consent.

94.     Defendants used Mr. Thomas's identity for a commercial advantage or benefit by inducing consumers to enter into financial transactions with Defendants and to purchase infringing copyrighted material owned by Plaintiffs, encouraging consumers to support the upcoming Kickstarter campaign, and seeking positive publicity through association with Plaintiffs and the RoK brand. Exhibit 4 & 9.

95.     Defendants' unauthorized use of Mr. Thomas's identity caused economic and non-economic harm and damage to Plaintiffs by confusing consumers into entering into business transactions with Defendants, by inducing consumers to buy infringing copyrighted material, encouraging consumers to support the upcoming Kickstarter campaign, and seeking positive publicity through association with Plaintiffs and the RoK brand for unauthorized use of Mr. Thomas's identity.

**Count VI**
**Violation of Publicity Rights**

96.     Plaintiffs incorporate by reference the preceding paragraphs.

97.     Defendants used Plaintiffs' identity by using Mr. Thomas's name and photo on Defendants' website and Mr. Thomas's name in the emails sent to the public. Exhibit 4 & 9.

98.     Defendants used Mr. Thomas's name, photo, or other personal attributes without Plaintiffs' consent.

99.    Defendants used Mr. Thomas's identity for commercial gain by advertising on Defendants' website, inducing consumers to purchase infringing copyrighted material of RoK merchandise and promotions, encouraging consumers to support the upcoming Kickstarter campaign, and seeking positive publicity through association with Plaintiffs and the RoK brand. Exhibit 4 & 9.

100.    Plaintiffs suffered economic and non-economic harm as a result of Defendants' unauthorized use of Mr. Thomas's identity which included lost income and damage to reputation.

**Count VII**
**False Endorsement (Lanham Act)**

101.    Plaintiffs incorporate by reference the preceding paragraphs.

102.    Defendants used Plaintiffs' identity by using Mr. Thomas's name and photo on Defendants' website and Mr. Thomas's name in the emails sent to the public. Exhibit 4 & 9.

103.    Defendants' unauthorized use of Plaintiffs' identity is likely to cause confusion among consumers as to whether Plaintiffs are affiliated with, endorses, or sponsors Defendants' products or services because Defendants used photo and name of Mr. Thomas on their website and emails which are the marketing channel. There are hundreds of people who have pre-registered to back the game campaign by pledging support for Defendants' marketing campaign. Exhibit 3.

104.    Defendants' use of Plaintiffs' identity is in connection with goods in interstate commerce and commercial transaction because Defendants' unauthorized use of Mr. Thomas's identity on their website and emails was to induce consumers across the United States and worldwide to purchase infringing copyrighted material of RoK merchandise, to encourage consumers to support the upcoming Kickstarter campaign, and to seek positive publicity through

association with Plaintiffs and the RoK brand. Defendants' website showed an imminent launch date and hundreds who have subscribed due to Defendants' use of Plaintiffs' identity. Exhibit 3.

105.    Defendants used Mr. Thomas's name, photo, or other personal attributes without Plaintiffs' consent.

106.    Defendants' use of Mr. Thomas's identity was done in a way that implied endorsement from Plaintiffs for the infringing copyrighted material and the Kickstarter campaign in order to induce consumers to purchase or enter into transactions with Defendants.

107.    Plaintiffs suffered economic and non-economic harm as a result of Defendants' unauthorized use of Plaintiffs' identity which included lost income and damage to reputation.

### Count VIII
### Unfair Competition (Lanham Act)

108.    Plaintiffs incorporate by reference the preceding paragraphs.

109.    Defendants have unlawfully used Mr. Thomas's name, likeness, and the copyrighted game materials associated with RoK, in their marketing and promotional activities, including but not limited to their website, emails, and social media platforms. Defendants prominently featured Mr. Thomas's photo, name, and images of RoK without authorization, implying Mr. Thomas's endorsement of Defendants' products and services.

110.    Defendants' unauthorized use of Mr. Thomas's likeness, name, and game materials is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association of Plaintiffs with Defendants. Consumers are led to believe that Plaintiffs endorse, sponsor, or are otherwise affiliated with Defendants and their business activities, despite Plaintiffs' lack of consent or involvement.

111.    Defendants undertook these actions with full knowledge of Plaintiffs' rights and with the intent to deceive consumers and improperly capitalize on Plaintiffs' reputation and the

goodwill associated with RoK. Defendants' conduct was intentional and willful, aiming to benefit from Plaintiffs' creative work and reputation in the tabletop gaming industry.

112.    As a direct result of Defendants' unauthorized and misleading use of Mr. Thomas's likeness and game materials, Plaintiffs have suffered and will continue to suffer harm to their business reputation, loss of control over their brand, and the erosion of goodwill associated with RoK and Plaintiffs' Works.

113.    Defendants' actions undermine the public interest by promoting deceptive business practices and infringing upon the rights of creators to control the use of their intellectual property and personal likeness. Protecting Plaintiffs' rights under the Lanham Act aligns with the public interest by preserving the integrity of marketplace information and preventing consumer deception.

## Count IX
## Unjust Enrichment

114.    Plaintiffs incorporate by reference the preceding paragraphs.

115.    Plaintiff The TableTop Adventure, is the creator and rightful owner of all intellectual property rights associated with the tabletop game RoK, including copyrighted materials, designs, and related assets. Although negotiations for an exclusive license agreement occurred between Plaintiffs and Defendants, no formal or binding agreement was ever signed by Plaintiffs. Plaintiffs retained all ownership rights and did not grant Defendants permission to use his intellectual property commercially.

116.    Despite the lack of an agreement, Defendants proceeded to use Mr. Thomas's name, likeness, copyrighted game materials, and related assets to market and promote Defendants' own services and business interests, including a marketing campaign and

subscription program. Defendants prominently displayed Mr. Thomas's photo, name, and images of RoK on their website, social media, and emails without Plaintiffs' consent or any compensation to Plaintiffs.

117.    Defendants obtained a substantial benefit from the unauthorized use of Plaintiffs' intellectual property and likeness, including but not limited to: increased visibility and engagement with potential customers due to the association with Plaintiffs and RoK; profits generated from customers signing up for Defendants' subscription program, driven in part by the use of Plaintiffs' likeness and game materials; and enhanced reputation and goodwill associated with the use of Plaintiffs' Works and persona in their promotional materials.

118.    Plaintiffs received no compensation or acknowledgment for Defendants' use of their materials and reputation. As a result, Plaintiffs were deprived of the opportunity to control, protect, or capitalize on their intellectual property and likeness. Defendants' actions have unjustly enriched them at Plaintiffs' expense.

119.    It would be inequitable and unjust for Defendants to retain the benefits derived from the unauthorized use of Plaintiffs' intellectual property and likeness without compensating Plaintiffs for the value of their contributions and reputation. Defendants' actions have caused Plaintiffs harm by diluting the value of their intellectual property, infringing upon their right to exclusive control over their creative works, and eroding the goodwill associated with RoK.

<u>**Prayer for Relief**</u>

WHEREFORE, the Plaintiffs pray for judgment against Defendants such that:

a.    Defendants and their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein;

b.      Defendants be required to pay Plaintiffs their actual damages and Defendants' profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. §504;

c.      Defendants be required to pay Plaintiffs their actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 15 U.S.C. § 1117;

d.      Defendants be required to pay Plaintiffs their actual damages and Defendants' profits attributable to the invasion of privacy for the appropriation of name or likeness, or, at Plaintiff's election, remedies, as provided in common law for invasion of privacy;

e.      Defendants be required to pay Plaintiffs their actual damages and Defendants' profits attributable to the violation of publicity right, or, at Plaintiff's election, remedies, as provided in common law for violation of publicity rights;

f.      Defendants be required to pay Plaintiffs their actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 15 U.S.C. § 1125(a);

g.      Defendants be required to pay Plaintiffs their actual damages sustained as a result of Defendants' unfair competition, disgorgement of any profits Defendants have gained through their deceptive and infringing practices, treble damages under the Lanham Act due to Defendants' willful misconduct, and preliminary and permanent injunctive relief to prevent Defendants from further unauthorized use of Plaintiff's name, likeness, and copyrighted materials.

h.      Defendants be required to disgorge all profits obtained from the unauthorized use of Plaintiffs' intellectual property, name, and likeness, to pay compensatory damages upon

Defendants for the benefits derived from Plaintiffs' Works, and remedies, as provided in common law for unjust enrichment.

i.      Plaintiffs be awarded their attorneys' fees and costs of suit under the applicable statutes sued upon;

j.      Plaintiffs be awarded pre- and post-judgment interest; and

k.      Plaintiffs be awarded such other and further relief as the Court deems just and proper.

**<u>Jury Demand</u>**

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED: <u>  12/6/2024  </u>                    Respectfully submitted,

                                    <u>  Matt Nuzum  </u>
                                    Matthew Nuzum, AT0014898
                                    NU Legal PLC
                                    5335 Merle Hay Rd Ste 7
                                    Johnston, IA 50131
                                    Telephone: 515-994-0404
                                    Email: matt@surge.law
                                         team@surge.law
                                    ATTORNEY FOR PLAINTIFFS,
                                    SHAWN THOMAS AND
                                    THE TABLETOP ADVENTURE, LLC

22