**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SHAWN THOMAS | |
| | |
| THE TABLETOP ADVENTURE, LLC | |
| An Iowa Limited Liability Company | |
| | |
| Plaintiffs, | Case No.: 3:24-cv-03061-B |
| | |
| v. | |
| | |
| LEYLINE PUBLISHING LLC, | |
| A Texas Limited Liability Company, d.b.a. | **PLAINTIFFS' MOTION FOR A** |
| Geek Therapeutics, | **TEMPORARY RESTRAINING** |
| | **ORDER AND A PRELIMINARY** |
| LEYLINE EDUCATION PLLC, | **INJUNCTION** |
| A Texas Professional Limited Liability | |
| Company, | |
| | |
| DR ANTHONY BEAN, Ph.D., | |
| | |
| ALICIA FIGLIUOLO | |
| | |
| Defendants. | |

Plaintiffs, Shawn Thomas and the TableTop Adventure, LLC ("TableTop Adventure";

together with Thomas, "Plaintiffs"), through their undersigned counsel, move under Federal Rule

of Civil Procedure 65 for the following temporary restraining order and preliminary injunction

against all Defendants:

1.      Defendants, and their officers, agents, servants, employees, and all other persons in

active concert or participation with Defendants are enjoined from publishing,

distributing, posting, or otherwise making available to the public, in whole or in part,

any copyrighted material owned by Plaintiffs, including but not limited to Realms of Kymoria Quick Start Kit Guide, setting and lore, characters images, maps, and rulebooks, currently registered under U.S. Copyright Registration.

2.      Defendants, and their officers, agents, servants, employees, and all other persons in active concert or participation with Defendants are enjoined from using Plaintiffs' registered trademark "Realms of Kymoria" in any medium, including online platforms and emails.

3.      Defendants, and their officers, agents, servants, employees, and all other persons in active concert or participation with Defendants are enjoined from soliciting or accepting payments in connection with unauthorized release or distribution of Plaintiffs' copyrighted material including Backerkit or similar platforms.

In support of this Motion, Plaintiffs rely on the accompanying Brief in Support and their Verified Complaint [Dkt. 1]. As Plaintiffs show in their brief, they are entitled to immediate and preliminary injunctive relief because (1) Plaintiffs are substantially likely to succeed on the merits of their claims, (2) Plaintiffs are and will continue to suffer irreparable harm in the loss of their intellectual property rights absent immediate relief from this Court, (3) the balance of equities decidedly tips in favor of protecting Plaintiffs' intellectual property rights, and (4) the public interest supports upholding the protection of intellectual property as it aims to incentivize innovation and creativity, promote investment, and maintain consumer trust.

Plaintiffs respectfully request that the Court issue an *ex parte* temporary restraining order given the ongoing irreparable harm to their intellectual property rights.

A proposed order is attached.

Dated: April 22, 2025

Respectfully submitted,

/s/ Matthew Nuzum
Matthew Nuzum
TX Bar No. 24142248
NU Legal PLC
5335 Merle Hay Rd Ste 7
Johnston, IA 50131
Telephone: 515-994-0404
Email: matt@surge.law
        team@surge.law
ATTORNEY FOR PLAINTIFFS,
SHAWN THOMAS AND
THE TABLETOP ADVENTURE, LLC

## <u>CERTIFICATE OF REASONABLE EFFORTS TO GIVE NOTICE OF TRO<br>AND OF CONFERENCE</u>

Under Fed. R. Civ. P. 65(b)(1)(B) and Local Rule 7.1, I certify that on the evening of April 22, 2025, I sent a copy of Plaintiff's verified complaint by email to Mr. Michael Burke (MMBurke@cozen.com), general counsel for Defendants. I informed Mr. Burke of Plaintiffs' intent to file a temporary restraining order and preliminary injunction motion on the morning of April 24, 2025, and asked if Defendants had a position on Plaintiffs' motion. Mr. Burke has not provided a position.

Immediately after filing Plaintiffs' TRO and preliminary injunction motion, I sent a copy of the motion, supporting brief, and proposed order to Mr. Burke by email. Plaintiffs are also making efforts to personally serve each Defendant with process and a copy of Plaintiffs' motion, brief, and proposed order.

Because of the ongoing irreparable damage to Plaintiffs' intellectual property rights, notice should not be required.

/s/ Matthew Nuzum
Matthew Nuzum
NU Legal PLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 24, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and copy of the filing to all counsel of record, and further, and a true and correct copy of the foregoing document was sent by electronic mail to Mr. Michael Burke, Defendants' general counsel.


/s/ Matthew Nuzum_____
Matthew Nuzum
NU Legal PLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

R. Civ. P.
SHAWN THOMAS

THE TABLETOP ADVENTURE, LLC
An Iowa Limited Liability Company

Plaintiffs,                                    Case No.: 3:24-cv-03061-B

v.

LEYLINE PUBLISHING LLC,                        **PLAINTIFFS' BRIEF IN SUPPORT**
A Texas Limited Liability Company, d.b.a.      **OF MOTION FOR A TEMPORARY**
Geek Therapeutics,                             **RESTRAINING ORDER AND A**
                                               **PRELIMINARY INJUNCTION**
LEYLINE EDUCATION PLLC,
A Texas Professional Limited Liability
Company,

DR ANTHONY BEAN, Ph.D.,

ALICIA FIGLIUOLO

Defendants.

Matthew Nuzum
TX Bar No. 24142248
NU Legal PLC
5335 Merle Hay Rd Ste 7
Johnston, IA 50131
Telephone: 515-994-0404
Email: matt@surge.law
        team@surge.law

ATTORNEY FOR PLAINTIFFS

# <u>TABLE OF CONTENTS</u>

**Page(s):**

TABLE OF AUTHORITIES ……………………………………………………… iii

INTRODUCTION …………………………………………………...…………… 1

STATEMENT OF FACTS …………………………………………...…………… 3

     Plaintiffs Developed Copyrighted Material and Trademark…… ……..…………… 3

     Plaintiffs and Defendants' Attempts to Do Business ..………………………….….. 3

     Changes in the Open Gaming License Necessitated Changes in RoK;

          Led to Dispute …………………………………………………………….4

     Business Relations Sour; Defendants Press on with Marketing RoK…………..……… 5

     Defendants' Continued Intellectual Property Infringement ……………….…..……… 6

     Defendants Announce Impending Release of Copyrighted Material.…………….…….7

ARGUMENT …………………………………………………………….…..……… 7

 I.   Plaintiffs Are Substantially Likely to Succeed on the Merits Against the Defendants…..7

     A.  Plaintiffs Are Likely to Succeed on Their Claim for Copyright Infringement…..8

     B.  Plaintiffs Are Likely to Succeed on Their Claim for Trademark Infringement and

        False Endorsement Under Lanham Act. ………………………………… 9

         1.  Trademark Infringement ………………………………………….9

         2.  False Endorsement under Lanham Act ………………………….10

 II.   Plaintiffs Suffer and Will Suffer Irreparable Harm Absent Immediate Relief………... .11

 III.  Immediate Action Required……………………………………………………....13

 IV.  The Balance of Harms Favors Plaintiffs' Intellectual Property Rights. ……..…………13

 V.   The Injunction Will Not Undermine the Public Interest. ……………………………14

CONCLUSION …………………………………………………………………...14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633, 637 (Fed. Cir. 2015) …………………………………………………….. 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991) ………………………………………….. 8

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*,
    434 F. Supp. 3d 473, 496 (E.D. Tex. 2020) ……………………………………………… 12

*Garcia v. Google, Inc.*,
    786 F.3d 733, 744 (9th Cir. 2015) …………………………………...…….….……… 12

*Park 'n Fly v. Dollar Park & Fly*,
    469 U.S. 189, 198, 105 S. Ct. 658, 663 (1985) ……………………………………….. 14

*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379, 1383 n.3 (5th Cir. 1996) …………………………...………………….. 10

*Smith v. Tarrant Cnty. Coll. Dist.*,
    670 F. Supp. 2d 534, 537 (N.D. Tex. 2009) ………………………..………………….... 7

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995, 996 (Fed. Cir. 1986) …………………………………………………….. 13

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 7, 129 S. Ct. 365, 366 (2008) ……………………………………………7, 12

**Statutes**:

17 U.S.C. § 501 ……………………………………………………………… 2, 6, 7, 8, 11

15 U.S.C. § 1114 …………………………………………………………………….7, 9

15 U.S.C. § 1125 …………………………………………………………………….. 7, 10

## INTRODUCTION

Defendant Leyline Publishing LLC, Defendant Leyline Education PLLC, Defendant Dr. Anthony Bean, Ph.D., and Defendant Alicia Figliuolo insist on unauthorized use and distribution of Plaintiffs' copyright materials and Plaintiffs' trademark for commercial gains. By moving for a temporary restraining order and preliminary injunction, Plaintiffs ask this Court to put a swift end to Defendants' use and distribution of copyrighted materials as well as Plaintiffs' trademark and prevent further irreparable harm to Plaintiffs' intellectual property rights.

Dungeons and Dragons and similar games are known in the industry as "tabletop role playing games," or "TTRPGs." These games are composed of several parts, for example rules, artistically created maps, rich stories, artwork, worksheets, and other creative assets designed to build an immersive fictional world for players to explore in groups. Wizards of the Coast LLC is the publisher of the Dungeons and Dragons game and has released the rulebook and other key components useful for creating a TTRPG under a permissive copyright license called the Open Gaming License, or OGL. Many creators have built successful games and businesses by combining their original works of art and trademarks with OGL components.

Plaintiff Shawn Thomas and Defendant Bean have independently built businesses with the hopes of helping use immersive games like TTRPGs to create supportive environments for people who struggle to integrate socially. In particular, Plaintiff Shawn Thomas created a supportive world called the Realms of Kymoria comprising stories, maps, characters, and worksheets, the collection of which he calls a "Business Model." This Business Model incorporates material released by Wizards of the Coast under the OGL. Defendant Bean has created a training program for licensed mental health therapists teaching how to use TTRPGs and other tools in a therapeutic environment. An example of a shared goal by Plaintiff Thomas and

Defendant Bean is to help people with social anxiety practice social skills in a fictional environment that they can then use when interacting in a normal day-to-day setting.

This lawsuit stems from an attempt by the Plaintiffs and the Defendants to negotiate a contract to distribute Plaintiffs' original creations and trademarked tools to Defendants' audience of therapists and supporters. Unfortunately, during the negotiations of the contract, Wizards of the Coast announced changes to the terms for the material that they distribute under the OGL which could cause Plaintiffs' creations to infringe on Wizards of the Coasts's copyrighted material. Plaintiff Thomas desired to adapt Plaintiffs' game to avoid any future problems with Wizards of the Coasts' OGL content. This caused friction between the Plaintiffs and Defendants, ultimately preventing them from negotiating a deal.

Despite no contract or license agreement between the parties, Defendants have chosen to unlawfully copy, display, distribute, and prepare derivative works based upon the copyrighted materials at issue without authorization from Plaintiffs, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 501. Defendants also have continued to unlawfully use, display, and make false or misleading statements regarding Plaintiffs' trademark with a tendency to deceive a substantial portion of the intended audience which is likely to influence purchasing decisions. By continuing to engage in unauthorized uses of the copyrighted materials and trademark, Defendants are directly infringing Plaintiffs' rights under the Copyright Act and the Lanham Act.

This Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunction to preserve Plaintiffs' intellectual property rights and protect Plaintiffs against Defendants' ongoing intellectual property rights infringement.

## STATEMENT OF FACTS[1]

**Plaintiffs' Developed Copyrighted Material and Trademark**

Plaintiff Thomas began developing a fictional world, characters, and stories specifically intended to create a supportive game-play environment in 2018. (Dkt. 1, Verif. Compl. ¶14.) In 2021, Plaintiff Thomas formally adopted the name "Realms of Kymoria" ("RoK") and established The TableTop Adventure, LLC to hold the copyrights and trademarks and to market, license, and distribute the intellectual property associated with the game. (Verif. Compl. ¶15.) Plaintiffs' work represents a culmination of years of development, creating a fictional world enriched with unique locations, cultures, and characters. (Verif. Compl.   16.)

**Plaintiffs' and Defendants' Attempts to do Business**

In 2021, Plaintiff Thomas, as Plaintiff The TableTop Adventure, LLC's sole member, acquired the Therapeutic Game Master Certification from Geek Therapeutics. (Verif. Compl. ¶17.) Defendant Alicia Figliuolo learned about Plaintiffs' supportive tabletop game and expressed interest in the game, then arranged a meeting between Plaintiff Thomas, Defendant Bean, and Defendant Figliuolo at the beginning of 2022. This resulted in a discussion of having Plaintiff Thomas as a consultant for Therapeutic Game Master Certification program and for Defendant Bean to purchase the rights to use Plaintiffs' Business Model and to act as a publisher for the RoK. (Verif. Compl. ¶¶ 18-19.)

Even though there were communications regarding the potential collaboration, Plaintiffs were concerned about losing intellectual property rights, so Defendant Bean encouraged Plaintiffs to draft a license agreement by which Plaintiffs would retain all intellectual property

---

[1] All facts stated are from Plaintiffs' Verified Complaint. Plaintiffs incorporate by reference all the verified factual allegations from their Verified Complaint. Plaintiffs are suffering irreparable injury.

rights. Defendant Bean signed a preliminary draft agreement on March 7, 2022, but Plaintiffs did not sign. (Verif. Compl. ¶¶ 20-21, 25-27.) This draft included licensing, distribution, and payment terms of $50,000 by Defendants to Plaintiffs, but no payments were made by Defendants. (Verif. Compl. ¶¶ 25, 28.) There was an ongoing negotiation for this agreement, but no final agreement was reached. (Verif. Compl. ¶¶ 29-30.)

During the negotiation of this agreement, Plaintiffs refined the RoK contents and materials and shared them with Defendants. When it became clear that no suitable agreement could be negotiated, Plaintiffs later notified Defendants in writing that all rights were revoked to protect their intellectual property rights. (Verif. Compl. 23.)

Despite the terms of the preliminary agreement which preserved for Plaintiffs all intellectual property rights to the game, on October 11, 2022, Defendant Leyline Educational LLC, through counsel, filed for a 1(b) Intent to Use trademark for the name "REALMS OF KYMORIA" in international classes 28, 41, and 42 (U.S. Serial No. 97627742). (Verif. Compl. 35.)

**Changes in the Open Gaming License Necessitated Changes in RoK; Led to Dispute**

On or about December 21, 2022, information was leaked to the Internet showing that Wizards of the Coast, Inc. ("WotC") intended to make sweeping changes to the Open Gaming License ("OGL"), which would grant WotC extensive rights to use independent game developer's content. (Verif. Compl. ¶¶ 36-38.)

As an independent developer who would be impacted by the license change, Plaintiffs expressed deep concern to Defendants. If this license change became effective, Plaintiffs would be required to grant a perpetual license of the RoK content to WotC, which Plaintiffs did not

wish to do. The changes to the OGL appeared to undermine the assurances of ownership and control. (Verif. Compl.  40.)

**Business Relations Sour, Defendants Press on with Marketing RoK**

Defendants started marketing the RoK as early as 2022 with no licensing agreement finalized, and Defendants have used an online marketplace called Backerkit to attract early customers by offering unique merchandise and incentives. (Verif. Compl. ¶¶ 42-44.) By late summer of 2022, Defendants were marketing pre-orders for the RoK merchandise which intensified the promotional effort in late 2022 and into 2023. (Verif. Compl.  45.)

In February 2023, the discussion between Plaintiffs and Defendants to resolve compatibility issues with the OGL broke down, so both parties sought legal counsel with mutual agreement that the project needed to be terminated. On April 19, 2023, Plaintiffs sent a demand letter to Defendants to cease all activities related to RoK and to assign trademark application to Plaintiff Thomas. (Verif. Compl. ¶47.) Defendants chose to abandon the trademark application rather than assigning it to Plaintiff Thomas which prolonged the time that Plaintiff Thomas could apply for this trademark himself. (Verif. Compl.  48.)

Plaintiff The TableTop Adventure LLC received copyright registrations for RoK material. (Verif. Compl.  50.)

Until present, Defendants still possess copies of the RoK material in the form that is questionably uncompliant with the OGL, and continue to use the name RoK in their marketing efforts. (Verif. Compl. ¶49.) While legal processes were ongoing, a new campaign on Backerkit was launched. (Verif. Compl.  45.)

**Defendants' Continued Intellectual Property Infringement**

Plaintiffs became aware that Defendants did not comply with the terms of the demand and continued to market RoK intellectual property by announcing plans to distribute and sell the game on Backerkit with hundreds of people pre-registered to back the game. (Verif. Compl. ¶51.) Defendants have created websites and merchandise to promote and sell the game that infringes on Plaintiffs' intellectual property rights and falsified emails to people interested in RoK by drafting and sending emails purportedly from Plaintiff Thomas encouraging recipients to support the upcoming campaign. (Verif. Compl. ¶¶ 52-53.)

This case was originally filed in the United States District Court for the Southern District of Iowa, but the Court dismissed the case due to lack of personal jurisdiction and improper venue, rather than on the merits of Plaintiffs' claims. (Verif. Compl. ¶62.) Following the dismissal, Defendants publicly misrepresented the nature of the Court's ruling by announcing that Plaintiffs had "lost" the case, implying that Plaintiffs' claims were adjudicated on their merits, when in fact they were dismissed solely on jurisdictional grounds. (Verif. Compl.   63.) This has resulted in ongoing harm to Plaintiffs' brand.

Notwithstanding the prior dismissal, Defendants have continued to unlawfully copy, display, distribute, and prepare derivative works based upon the copyrighted materials at issue without authorization from Plaintiffs in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 501. (Verif. Compl. ¶64.) Defendants' ongoing acts of infringement constitute a violation of 17 U.S.C. § 501, which protects the exclusive rights of copyright holders. By continuing to engage in unauthorized uses of the copyrighted materials, Defendants are directly infringing Plaintiffs' rights under the Copyright Act. (Verif. Compl.   65.)

**Defendants Announce Impending Release of Copyrighted Material**

On or about April 2, 2025, Defendants announced on the Backerkit website the release of the RoK Quick Start Kit Guide in PDF form on April 3, 2025, in which Defendants are distributing infringing materials, copyrighted materials, and disputed copyright materials. This Quick Start Kit contains some, but not all, of the copyrighted elements of the RoK. Defendants have also publicly notified early supporters of the intent to soon deliver the full RoK game (Appendix).

Defendants also have continued to unlawfully use and display and make false or misleading statements regarding Plaintiffs' trademark with a tendency to deceive a substantial portion of the intended audience which is likely to influence purchasing decisions. By continuing to engage in unauthorized uses of the copyrighted works and trademark, Defendants are directly infringing Plaintiffs' rights under the Copyright Act and the Lanham Act.

## ARGUMENT

Plaintiffs are entitled to a temporary restraining order and preliminary injunction because Plaintiffs satisfy their burden to demonstrate "(1) a substantial likelihood of success on the merit; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to [Plaintiffs] outweighs any harm to [Defendants] that may result from the injunction; and (4) that the injunction will not undermine the public interest." *Smith v. Tarrant Cnty. Coll. Dist.*, 670 F. Supp. 2d 534, 537 (N.D. Tex. 2009).

## I.    Plaintiffs Are Substantially Likely to Succeed on the Merits Against the Defendants.

The Court held that the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success. *Winter v. NRDC, Inc.*, 555 U.S. 7, 7, 129 S. Ct. 365, 366

(2008). Plaintiffs are substantially likely to succeed on the merits of their claims for copyright infringement under 17 U.S.C. § 501 and trademark infringement and false endorsement under 15 U.S.C. §1114 and § 1125(a). There is clear evidence that Defendants use and distribute Plaintiffs' intellectual property without authorization or license.

### A.  Plaintiffs Are Likely to Succeed on Their Claim for Copyright Infringement.

To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991).

Here, Plaintiffs own copyrighted materials which they created and include but are not limited to original written content, original visual materials, setting and lore, original characters, original map from the RoK. Moreover, Plaintiffs acquired registered copyrights with U.S. Copyright Registration Certificates in Exhibit 7 attached to Plaintiffs' Verified Complaint. Thus, Plaintiffs can prove that they have ownership of a valid copyright.

Moreover, despite receiving no license or permission from the Plaintiffs, Defendants copied, displayed, distributed, and prepared derivative works and continue to copy, display, distribute, and prepare derivatives based upon the Plaintiffs' copyrighted materials at issue without the Plaintiffs' authorization in violation of 17 U.S.C. § 501. Defendants have prepared an online marketplace for the sale and display of copies of the copyrighted materials at issue and placed a countdown showing that the copyrighted materials will be offered for sale in a matter of weeks. Defendants have advertised through the Internet that they will be offering copies of copyrighted materials at issue for sale.

Recently, Defendants published and distributed the RoK Quick Start Kit Guide that substantially copied Plaintiffs' copyrighted materials. The copyrighted materials are distributed from April 3, 2025, via Google Drive and made accessible through email sent via Backerkit.

Defendants' conduct is willful because they chose to publish and distribute the RoK contents and copyrighted materials even though Plaintiffs notified Defendants in writing that all Defendants' rights were revoked when no suitable agreement could be negotiated. (Verif. Compl. 23.) There was a previous litigation that was dismissed but not on the merits, and Defendants are fully aware of Plaintiffs' ownership of these copyrighted materials.

Therefore, Defendants' conduct meets the standard for copyright infringement. The materials are not only inspired by Plaintiffs' copyrighted materials but contain Plaintiffs' original materials. Thus, Plaintiffs are likely to succeed on the merits of their copyright infringement claim.

This Court should prohibit Defendants from use and distribution of Plaintiffs' copyrighted materials and disputed materials, grant Plaintiffs' motion, and put a stop to Defendants' ongoing copyright infringement.

**B. Plaintiffs Are Likely to Succeed on Their Claim for Trademark Infringement and False Endorsement Under Lanham Act.**

1. Trademark Infringement

To establish trademark infringement, 15 U.S.C. Code § 1114(1)(a) provides that any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection

with which such use is likely to cause confusion, or to cause mistake, or to deceive shall be liable in a civil action by the registrant for the remedies.

Here, Plaintiffs are the registrant of the trademark "Realms of Kymoria." Defendants use the trademark in commerce without Plaintiffs' consent in connection with the sale, offering to sell, distribute, and advertising of the RoK tabletop game, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

Therefore, Defendants' conduct meets the standard for trademark infringement. Thus, Plaintiffs are likely to succeed on the merits of their trademark infringement claim.

2. False Endorsement under Lanham Act

Courts have summarized the basic elements a plaintiff must allege in an action under 15 U.S.C. § 1125(a) as follows: (1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n.3 (5th Cir. 1996).

Here, Defendants made misleading statements that Plaintiffs' product, the RoK, was their own with a tendency to deceive a substantial portion of the intended audience, the game backers. The deception is material because it is likely to influence purchasing decisions. Plaintiffs' photo and the RoK trademark were used in the emails sent to the consumers, Defendants' website, and on other online platforms such as Backerkit. This misleading use contributed to the promotion of the  RoK tabletop game which has been sold in interstate commerce. There is injury to Plaintiffs

in terms of pecuniary loss in the form of lost profits, legal expenses, and interference with Plaintiffs' business operations.

Therefore, Defendants' conduct meets the standard for false endorsement under Lanham Act. Thus, Plaintiffs are likely to succeed on the merits of their false endorsement claim. Defendants' use of Plaintiffs' registered trademark and name in connection with the unauthorized distribution of infringing materials has confused consumers into believing that Defendants' RoK Quick Start Kit Guide is affiliated with or endorsed by Plaintiffs.

This Court should prohibit Defendants from use and false endorsement of Plaintiffs' registered trademark, grant Plaintiffs' motion, and put a stop to Defendants' ongoing trademark infringement.

## II.    Plaintiffs Suffer and Will Suffer Irreparable Harm Absent Immediate Relief.

Before the litigation, Defendants had already marketed RoK intellectual property by announcing plans to distribute and sell the game on Backerkit with hundreds of people pre-registered to back the game. (Verif. Compl. ¶51.) Defendants have created websites and merchandise to promote and sell the game that infringes on Plaintiffs' intellectual property rights, and falsified emails to people interested in the RoK by drafting and sending emails purportedly from Plaintiff Thomas encouraging recipients to support the upcoming campaign. (Verif. Compl. ¶¶ 52-53.)

Plaintiffs previously filed a lawsuit against Defendants in the United States District Court for the Southern District of Iowa, seeking relief for claims substantially similar to the current litigation, and in that prior proceeding, the Court dismissed the case due to lack of personal jurisdiction and improper venue, rather than on the merits of Plaintiffs' claims. (Verif. Compl. ¶62.) Following the dismissal, Defendants publicly misrepresented the nature of the Court's

ruling by announcing that Plaintiffs had "lost" the case, implying that Plaintiffs' claims were adjudicated on their merits, when in fact they were dismissed solely on jurisdictional grounds. (Verif. Compl.  63.)

Defendants have continued to unlawfully copy, display, distribute, and prepare derivative works based upon the copyrighted materials at issue without authorization from Plaintiffs, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 501. (Verif. Compl. ¶64.) Defendants' ongoing acts of infringement constitute a violation of 17 U.S.C. § 501, which protects the exclusive rights of copyright holders. By continuing to engage in unauthorized uses of the copyrighted materials, Defendants are directly infringing Plaintiffs' rights under the Copyright Act. (Verif. Compl.  65.)

Recently, Defendants published and distributed the RoK Quick Start Kit Guide that substantially copied Plaintiffs' copyrighted materials. The copyrighted materials are distributed from April 3, 2025, via Google Drive and made accessible through email sent via Backerkit. This Quick Start Kit Guide contains some, but not all, of the copyrighted elements of the RoK. Defendants have also publicly notified early supporters of the intent to soon deliver the full RoK game (Exh. 12). The release will cause irreparable harm.

The Court in *Winter* held that "[Plaintiff] must demonstrate that in the absence of a preliminary injunction, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter* at 366. The Court also held that the irreparable harm a plaintiff seeks to remedy with injunctive relief must be a harm to its legal copyright interests. *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015). Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Fletcher's*

*Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 496 (E.D. Tex. 2020).

## III.    Immediate Action Required.

Without a temporary restraining order and a preliminary injunction, Plaintiffs are likely to suffer irreparable harm before a decision on the merits can be rendered because Defendants have already distributed part of RoK without authorization, and Defendants will eventually release the full version of RoK for profits. Defendants' distribution and promotion on Backerkit and other online platforms is not some remote future injury, but it has already happened since April 3, 2025. Plaintiffs' harm stems from copyright, which is their legal interests as authors, and Plaintiffs' irreparable injury include, but is not limited to, loss of control of Plaintiffs' reputation and of RoK, loss of trade as Defendants receive all the profits, and loss of goodwill.

Defendants also have continued to unlawfully use and display and have made false or misleading statements regarding Plaintiffs' trademark with a tendency to deceive a substantial portion of the intended audience which is likely to influence purchasing decisions. By continuing to engage in unauthorized uses of the copyrighted works and trademark, Defendants are directly infringing Plaintiffs' rights under the Copyright Act and the Lanham Act.

Only immediate action by this Court can remedy Defendants' copyright and trademark infringements in a way which will prevent Plaintiffs' irreparable harm.

## IV.    The Balance of Harms Favors Plaintiffs' Intellectual Property Rights.

The balance of harms favors Plaintiffs. The Court held that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 996 (Fed. Cir. 1986).

13

Here, Plaintiffs only seek to preserve their intellectual property rights until a decision on the merits are reached. Defendants chose to distribute Plaintiffs' copyrighted materials, to use Plaintiffs' trademark, and to falsely endorse the RoK as their own in the commerce without Plaintiffs' authorization, Defendants have assumed the risk of injunctive relief.

Therefore, the threatened injury to Plaintiffs outweighs any harm to Defendants that may result from the injunction. The Court should grant Plaintiffs' motion.

**V.      The Injunction Will Not Undermine the Public Interest.**

The injunction will not undermine the public interest because it tends to protect property rights, innovation, creativity, and fair competition. The Court held that "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 637 (Fed. Cir. 2015). Here, there are no countervailing factors to weigh against because Defendants' conduct is infringement.

The Court held that trademark protection is important to both consumers and producers. Trademark law protects the public by making consumers confident that they can identify brands they prefer and can purchase those brands without being confused or misled. Trademark laws also protect trademark owners. When the owner of a trademark has spent considerable time and money bringing a product to the marketplace, trademark law protects the producer from pirates and counterfeiters. Moreover, the Court stated that "[n]ational protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 198, 105 S. Ct. 658, 663 (1985).

Here, Plaintiffs' RoK trademark should not be exploited by Defendants' use and distribution as the trademark law also protects the public as consumers as well as Plaintiffs as

producers. Plaintiffs spent considerable time and effort creating the RoK, therefore, Plaintiffs' rights should be protected as it is a part of public interest.

Thus, a temporary restraining order and a preliminary injunction will serve the public interest. That is one more reason to grant Plaintiffs' motion.

## **CONCLUSION**

For all these reasons, Plaintiffs ask that the Court grant its motion for a temporary restraining order and a preliminary injunction.

Respectfully submitted,

/s/ Matthew Nuzum_____
Matthew Nuzum
TX Bar No. 24142248
NU Legal PLC
5335 Merle Hay Rd Ste 7
Johnston, IA 50131
Telephone: 515-994-0404
Email: matt@surge.law
      team@surge.law
ATTORNEY FOR PLAINTIFFS,
SHAWN THOMAS AND
THE TABLETOP ADVENTURE, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and copy of the filing to all counsel of record, and further, and a true and correct copy of the foregoing document was sent by electronic mail to Mr. Michael Burke, Defendants' general counsel.

/s/ Matthew Nuzum
Matthew Nuzum
NU Legal PLC

4/22/25, 4:24 PM  🎉 Backer Only Update: Anticipated PDF Drop Incoming! on Realms of Kymoria A Therapeutic TTRPG Quickstart Kit for 5e - BackerKit

Case 3:24-cv-03061-B    Document 19    Filed 04/24/25    Page 25 of 28    PageID 182





**Realms of Kymoria A Therapeutic TTRPG Quickstart Kit for 5e**
by Geek Therapeutics



**Appendix**

‹ Back to Community

 **Geek Therapeutics**  CREATOR
19 days ago                              ⋯

## 🎉 Backer Only Update: Anticipated PDF Drop Incoming!

Dear Kymoria Champions,

We have exciting news from the realms—our long-awaited Realsm of Kymoria QuickStart Kit Guide is ready to make its way into your hands!

This expertly crafted guide is your official invitation to immerse yourself in the world of Kymoria before the Adventure's arrival, where therapeutic storytelling meets the magic of 5e gameplay. Inside this PDF, you'll find:

**An Introduction to Therapeutic TTRPG Play** – Learn how Kymoria uses collaborative storytelling to build trust, explore emotions, and foster resilience.
**Step-by-Step Rules for Getting Started** – Whether you're new to role-playing or a seasoned adventurer, our simplified rules help you jump right in.
**Setting & Lore** – Discover the core regions of Kymoria, meet its memorable NPCs, and learn about the forces shaping this ever-evolving world.
**Pre-generated Characters** – Perfect for immediate play or use in groups, schools, or individual sessions.

**PDF Drop Date: 3 April, 2025**
We have finished putting the final touches on layout and formatting to ensure this guide is as immersive and beautiful as the world it represents. We have provided a link to the Quick Start Kit Guide that will transport you to a secure google drive.

In order to access the materials, you must have a Google Account attached to the

4/22/25, 4:24 PM 🎉 Backer Only Update: Anticipated PDF Drop Incoming! on Realms of Kymoria A Therapeutic TTRPG Quickstart Kit for 5e - BackerKit

Case 3:24-cv-03061-B    Document 19    Filed 04/24/25    Page 26 of 28    PageID 183

name you provided when you backed the project. In thte message box please provide the following information:

Backer Name
Backer Email Address
Backer Tier and Add-ons *if any*

If you do not have a google account, you will need to email us at hello@geektherapeutics.com requesting access verification for a link to the product.

Once you have activated your request for materials and you have been verified through your email, you will be able to download the PDF to the Quick Start Kit Guide.

This guide will be the exact format for the Adventure. The text, callouts, narration, and fonts will all be uniform. What you experience in the Quick Start Kit Guide will be the same experience for the Adventure, however, you will see more art and Flix Tips.

Thank you for your continued belief in this project and in the healing power of story. This guide is only the beginning, and we can't wait to see what you do with it.

With gratitude and imagination,
The Realms of Kymoria Team
*Let your story begin.*

**USE THIS LINK TO START THE ACCESS REQUEST FOR REALMS OF KYMORIA QUICKSTART KIT GUIDE**

**https://drive.google.com/file/d/1STozAJ2TxI2JgAOu1Uk53L0arhsJ4iZ6/view?usp=sharing**

👍 0     👎 0     💬  7     ↗ Share

---

## Comments 7                                          Top Comments ⌄

---

💬 Log in to join the discussion

4/22/25, 4:24 PM    🎉 Backer Only Update: Anticipated PDF Drop Incoming! on Realms of Kymoria A Therapeutic TTRPG Quickstart Kit for 5e - BackerKit

Case 3:24-cv-03061-B    Document 19    Filed 04/24/25    Page 27 of 28    PageID 184

**Janel** ◎
16d

This is such great news, as I am hoping to start my therapeutic D&D group for the upcoming fall semester.  I am looking forward to getting immersed in this new world.

Are there any projections for when the adventure might be being shipped, or updates on what kinds of challenges might be being faced there?

I thought I should add, that for some reason (and maybe this is just me) this update did not come to my email, while every other post did, I just happened to stumble on it while checking in on things.

👍 1    👎 0

**Janel** ◎
16d

Oh my goodness I'm so excited!

👍 0    👎 0

**Janel** ◎
15d

Are there any estimates on timeline for the adventure?  :)

👍 0    👎 0

 **Geek Therapeutics**    CREATOR
15d

Hello Janel! We have finalized formatting for the QSG and the Module. We are waiting for a test copy to arrive to ensure the paper weight is correct and that the formatting issues are clear in the printing. As soon as we have the all clear on the paper and the print, it will be printed, surveys will go out, and then it will be shipped! We hope you enjoy the QSG!

👍 1    👎 0

3

4/22/25, 4:24 PM    🎉 Backer Only Update: Anticipated PDF Drop Incoming! on Realms of Kymoria A Therapeutic TTRPG Quickstart Kit for 5e - BackerKit

Case 3:24-cv-03061-B    Document 19    Filed 04/24/25    Page 28 of 28    PageID 185

 **Warren Rawlings** 
15d

I have the File for Quickstart. Reading through the Setting now. Thanks for getting this to us.

👍 0    👎 0

 **Geek Therapeutics**    CREATOR
15d

We hope you enjoy the QSG and all of the amazing lore that created this beautiful therapeutic adventure in The Realms of Kymoria!

👍 0    👎 0

 **Janel** ⊚
10d

Definitely love the QSG, it sounds like we are so close! I can understand not putting a timeline on things that are outside of your control. I'm wondering if it seems reasonable that we might be able to get the product, or even the full version of the pdf with the modules by this summer?

👍 0    👎 0

↑ Back to top of page