UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHAWN THOMAS and THE TABLETOP ADVENTURE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LEYLINE PUBLISHING, LLC; LEYLINE EDUCATION, PLLC; ANTHONY BEAN; and ALICIA FIGLIUOLO, <br><br> Defendants. | § § § § § § § § § § § § § § CIVIL ACTION NO. 3:24-CV-3061-B |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Shawn Thomas and The Tabletop Adventure, LLC (collectively, "Tabletop Adventure")'s Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. 19). The Court held a hearing on this Motion on June 4, 2025. For the following reasons, the Court **DENIES** the Motion.

I.

BACKGROUND

This case is about board games. Tabletop Adventure created a board game called "Realms of Kymoria" ("the Game") that has "a fictional world, character, and stories specifically intended to create a supportive game-play environment." Doc. 1, Compl., ¶ 14. The Game consists of "a fictional world enriched with unique locations, cultures, and characters." *Id.* ¶ 16.

Tabletop Adventure was approached by Defendants Leyline Publishing, LLC; Leyline Education, PLLC; Anthony Bean; and Alicia Figliuolo (collectively, "Leyline"). *Id.* ¶ 16. Leyline was interested in purchasing Tabletop Adventure's business model and publishing the Game. *Id.* ¶ 19.

While Tabletop Adventure was interested in working with Leyline, Tabletop Adventure did not want to lose control of its intellectual property. *Id.* ¶ 20. So Thomas drafted two licensing agreements and sent them to Leyline. *Id.* ¶ 25. Defendant Bean signed and dated both agreements. Doc. 26-1, Ex. 1, 2; Doc. 26-2, Ex. 2, 4.

The first agreement required Tabletop Adventure to provide Leyline with all the content associated with Tabletop Adventure's business model. Doc. 26-1, Ex. 1, 1. Leyline agreed to pay Tabletop Adventure $50,000 in exchange for this content. *Id.* At the hearing, Leyline and Tabletop Adventure agreed that this contract was no longer operable.

The second agreement allowed Leyline to use and sell the content that it purchased from Tabletop Adventure. Doc. 26-2, Ex. 2, 1–2. Tabletop Adventure agreed to provide several services, including "[h]igh-level writing, editing, and proofreading of core rulebooks that will be associated with the setting 'Realms of Kymoria.'" *Id.* Tabletop Adventure also agreed to provide "written modules" that would be used in the Game. *Id.* It further explained that Tabletop Adventure "cannot ask [Leyline] to stop selling/using" the content that it purchased. *Id.*

Tabletop Adventure and Leyline eventually disagreed on how quickly they should publish the game. *See id.* ¶ 46. The parties "mutually agreed that the project would need to be terminated." *Id.* Tabletop Adventure later sent Leyline a letter demanding that Leyline "immediate[ly] cease . . . all efforts to reproduce, distribute, modify, publish, or display any part of the [Game's] product." *Id.* ¶ 47.

Tabletop Adventure filed this case four months ago, Doc. 1, Compl., all four Defendants have filed an answer, Doc. 9, Answer, and the Court has entered a Scheduling Order, Doc. 14, Order. Two months ago, Leyline distributed the Game Quick Start Kit Guide, which Tabletop

Adventure claims is based on the Game. Doc. 19, Mot., 7. Leyline also told its customers it was going to distribute the Game. *Id.* at 27. Tabletop Adventure then filed a Motion seeking an ex parte temporary restraining order and a preliminary injunction. *See generally id.* The Court denied the request for ex parte relief because Tabletop Adventure failed to explain how it would suffer irreparable harm before Leyline could file opposition briefing. Doc. 20, Order, 2. The Court considers the remaining portions of the Motion below.

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation omitted). A plaintiff seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction should only be granted if the party seeking the injunction has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## III.

## ANALYSIS

Tabletop Adventure moves for a temporary restraining order and preliminary injunction on three of its claims: (1) copyright infringement; (2) trademark infringement; and (3) false endorsement under the Lanham Act. First, the Court converts the Motion to one only seeking a preliminary

injunction. Second, Tabletop Adventure has not developed a sufficient record to be awarded a preliminary injunction. Third, based on the limited record before the Court, Tabletop Adventure has not shown that it is likely to succeed on the merits of its claims.

A.   *The Court Converts Tabletop Adventure's Motion to a Motion Only Seeking a Preliminary Injunction.*

Tabletop Adventure filed its Motion seeking both a Temporary Restraining Order and a Preliminary Injunction. Doc. 19, Mot., 1. District courts have "discretion to convert a TRO motion to a PI motion when the other side has received notice" of the motion. *Esparza v. Bd. of Trs.*, 182 F.3d 915 at *2 (5th Cir. 1999. Here, Leyline received notice of Tabletop Adventure's Motion because Tabletop Adventure emailed the Motion to Leyline's attorney. Doc. 19, Mot., 4.[1] Therefore, the Court exercises its discretion and converts the Motion to a motion for a preliminary injunction. *See Esparza*, 182 F.3d 915 at *2.

B.   *Tabletop Adventure Has Failed to Develop a Sufficient Factual Record to Receive a Preliminary Injunction.*

Before addressing the substantive law of Tabletop Adventure's claims, the Court first finds Tabletop Adventure has not developed a factual record sufficient to warrant a preliminary injunction. To receive a preliminary injunction, "a plaintiff must . . . come forward with evidence showing their likelihood of success." 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2984.3 (3d ed. 2012) (Wright & Miller). A court should deny a motion for a preliminary injunction in cases where plaintiffs have not developed a sufficient factual record. *Cf. NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 500 (5th Cir. 2024).

The record before the Court consists of three documents. First, Tabletop Adventure

---

[1] The Court is referencing the CM/ECF pagination for only this cite to Tabletop Adventure's Motion. For any other cite to the Motion, the Court will use the Motion's pagination.

included screenshots showing that Leyline is distributing the Game Quick Start Kit Guide online. Doc. 19, Pl.'s App'x, 1–4. Second and third, Leyline provided two licensing agreements that Leyline and Tabletop Adventure purportedly entered. Doc. 26-1, Ex.1; Doc. 26-2, Ex. 2.[2] While Tabletop Adventure included other exhibits in its exhibit list, *see* Doc. 34, Ex. List, 1, it did not introduce any exhibits or witness testimony at the evidentiary hearing. Thus, no other exhibits are part of the record before the Court.

Tabletop Adventure cannot demonstrate a likelihood of success on the merits with such a sparse and undeveloped record. *See NetChoice, L.L.C.*, 121 F.4th at 500. The Court will not grant Tabletop Adventure the "extraordinary and drastic remedy" of a preliminary injunction because Tabletop Adventure has not presented nearly enough evidence to demonstrate its likelihood of success. *See Anderson*, 556 F.3d at 360. But even considering the limited record that is before the Court, Tabletop Adventure has not demonstrated a substantial likelihood of success on the merits.

C.    *Tabletop Adventure Has Not Demonstrated that it is Likely to Succeed on the Merits.*

Tabletop Adventure has not carried its burden of establishing that it is likely to succeed on the merits of its claims for copyright infringement, trademark infringement, or false endorsement. Tabletop Adventure claims that Leyline has distributed materials that infringe Tabletop Adventure's intellectual property. Doc. 19, Mot., 8–9. Tabletop Adventure must prove infringement by a preponderance of the evidence. But Tabletop Adventure has not presented sufficient evidence to prove a likelihood of success on any of its claims. And even if Tabletop Adventure had introduced

---

[2] Both parties' appendices do not comply with Local Rule 7.1(i)(2). Tabletop Adventure's Appendix is part of the same document as the Motion. And Leyline attached its exhibits to its Brief in Response to the Motion for a Preliminary Injunction. These practices do not comply with the Local Rules, which require that an "appendix must be assembled as a self-contained document, separate from the motion, response, reply, and brief." N. D. TEX. CIV. R. 7.1(i)(2).

sufficient evidence, its claims are also likely to fail because the parties entered a licensing agreement.

    1. <u>Tabletop Adventure Needs to Prove that it is Entitled to a Preliminary Injunction by a Preponderance of the Evidence.</u>

Leyline argues that Tabletop Adventure is only entitled to a preliminary injunction if it shows "clear and convincing proof of the necessary elements." Doc. 26, Br. Resp., 3; Doc. 39, Resp., 2. Leyline is incorrect. "[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, Tabletop Adventure only needs to prove its claims by clear and convincing evidence if it would need to meet this burden at trial. *Humana Ins. Co. v. Tenet Health Sys.*, No. 3:16-CV-2919-B, 2016 WL 6893629, at *27 (N.D. Tex. Nov. 21, 2016) (Boyle, J.). The burden of proof is a preponderance of the evidence for all three of Tabletop Adventure's claims at issue here. *See Broad. Music, Inc. v. Tex Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 693 (N.D. Tex. 2014) (Ramirez, M.J.); *see Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 449 (5th Cir. 2017). Therefore, Tabletop Adventure does not need to prove any of the preliminary injunction elements by clear and convincing evidence.

Leyline exclusively cites state court cases to support its argument that a plaintiff must prove each of their elements by clear and convincing evidence to receive a preliminary injunction. Doc. 26, Br. Resp., 3. However, federal courts apply "the federal standard for determining whether a preliminary injunction should be granted." *TRAVELHOST, Inc. v. Figg*, No. 3:11-CV-0455-D, 2011 WL 6009096, at *2 n.5 (N.D. Tex. Nov. 22, 2011) (Fitzwater, C.J.). Therefore, Texas's standard for a preliminary injunction does not apply in this case.

    2. <u>Tabletop Adventure Has Not Presented Evidence to Support its Claims.</u>

Tabletop Adventure has not presented enough evidence to support its claims for copyright infringement, trademark infringement, or false endorsement.

*i. Tabletop Adventure offers no evidence in support of its claim for copyright infringement.*

Tabletop Adventure has failed to show that it is likely to succeed on the merits of its copyright infringement claim because it did not provide the Court with the evidence necessary to determine whether the copyrighted work and allegedly infringing work are substantially similar. Copyright infringement[3] claims have three elements: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam).

Courts in the Fifth Circuit apply the ordinary observer test to assess whether the copyrighted work and the allegedly infringing work are substantially similar. *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015). First, courts identify the protectable and unprotectable elements of the copyrighted work. *Id.* at 550. The next step entails "a side-by-side comparison . . . between the original and the copy to determine whether a layman would view the two works as substantially similar." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (citations, quotations, and alterations omitted).

The Court cannot apply this test here because neither the copyrighted materials nor the allegedly infringing materials are part of the record. Tabletop Adventure argues that Leyline "published and distributed the [Game] Start Kit Guide that substantially copied [Tabletop Adventure's] copyrighted materials." Doc. 19, Mot., 9. However, Tabletop Adventure has not provided the Court with the Start Kit Guide or with Tabletop Adventure's original copyrighted

---

[3] Tabletop Adventure asserts a copyright infringement claim and a "secondary infringement" claim in its Complaint, Doc. 1, Compl., ¶¶ 54–78, but it did not move for a preliminary injunction based on its secondary infringement claim. *See* Doc. 19, Mot., 8. And while it argued that Leyline was unlawfully creating derivative works in its Reply, Doc. 29, Reply, 3–4, the Court will not consider an argument raised for the first time in Tabletop Adventure's Reply brief. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."). Accordingly, the Court will not address the merits of any secondary infringement or derivative works claim in this Order.

materials.[4] While Tabletop Adventure apparently planned on introducing the Game Quick Start Kit Guide into evidence at the hearing, Doc. 34, Ex. List, 1, it did not do so. *See* Doc. 40, Minute Entry (noting that the Court did not admit any exhibits). The Court cannot evaluate whether the Start Kit Guide is substantially similar to Tabletop Adventure's copyrighted materials without seeing either the Guide or the materials that Leyline allegedly copied. Therefore, Tabletop Adventure has failed to carry its burden of demonstrating that it is likely to succeed on the merits of its copyright infringement claim. *See Winter*, 555 U.S. at 20.

> *ii. Tabletop Adventure is Unlikely to Succeed on the Merits of its Trademark Infringement Claim.*

To succeed on a claim for trademark infringement, a plaintiff must prove: (1) that they have a legally protectible mark; and (2) a likelihood of consumer confusion with respect to source, affiliation, or sponsorship. 15 U.S.C. § 1125(a)(1)(A); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004). A mark is legally protectible if it is "distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Marks are separated into five categories of "generally increasing distinctiveness . . . (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana*, Inc., 505 U.S. 763, 768 (1992). Marks are only legally protectible if they fall into the last three categories. *Id.* Registered marks are presumed to be valid. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010). But "[t]his presumption of validity may be rebutted by establishing that the mark is not inherently distinctive." *Id.*

---

[4] At the hearing, Tabletop Adventure said that it had attached the copyrighted materials to its Complaint, but Tabletop Adventure only attached its copyright *registrations* to the Complaint, not the copyrighted materials themselves. *See* Doc. 1-7, Ex. 7, 1–4.

Tabletop Adventure offered no evidence in its Motion to support why it has a legally protectible mark. It only argued that it is "the registrant of the trademark 'Realms of Kymoria,'" Doc. 19, Mot., 10, but it did not provide any evidence that it has registered this trademark. Additionally, it did not attach any trademark registration to its Complaint even though it attached its copyright registrations to the Complaint. Doc. 1-7, Ex. G.

Tabletop Adventure attached the registration for its mark to its Reply. Doc. 29, Reply, 15. However, courts in the Northern District of Texas "generally refuse[] to consider evidence presented for the first time in a reply brief." *T & E Inv. Grp., LLC v. Faulkner*, No. 3:11-CV-0724-P, 2012 WL 12822296, at *2 (N.D. Tex. Sept. 27, 2012) (Solis, J.). And Tabletop Adventure did not move to admit this exhibit at the hearing. Thus, Tabletop Adventure has not established that its Realms of Kymoria mark is legally protectible.

Additionally, Tabletop Adventure has not demonstrated a likelihood of consumer confusion. Courts within the Fifth Circuit use the "digits of confusion" when evaluating whether consumers are likely to be confused by the defendant's use of the protected mark. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 427 (5th Cir. 2021). These "digits" include but are not limited to "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). No one "digit" is dispositive. *Id.*

In its Motion, Tabletop Adventure does not discuss the digits of confusion. Doc. 19, Mot., 9–10. Nor does it offer any evidence suggesting that consumers are likely to be confused by Leyline's alleged use of the Game's trademark. *Id.* And at the evidentiary hearing, Tabletop Adventure argued

that it had found evidence of consumer confusion in discovery, but none of this evidence is currently part of the record. Accordingly, Tabletop Adventure has not demonstrated a likelihood of success on the merits of its trademark infringement claim.

*iii. Tabletop Adventure is unlikely to succeed on the merits of its false endorsement claim.*

A false endorsement claim arises under § 1125 of the Lanham Act and prohibits "false representations concerning the origin or endorsement of goods." *Am. Pac. Indus., Inc. v. Yerrou*, No. 3:20-CV-273-KHJ-FKB, 2021 WL 1738983, at *3 (S.D. Miss. May 3, 2021) (quotation omitted). A false endorsement claim "protect[s] against consumer confusion and a producer's loss of good will by creating a means to sue parties who endeavor to exploit the name-recognition that a pre-existing producer has created in the marketplace." *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 935 (S.D. Tex. 2004), *aff'd*, 129 F. App'x 874 (5th Cir. 2005).

Tabletop Adventure argues that Leyline "made misleading statements that [Tabletop Adventure's] product, the [Game], was their own." Doc. 19, Mot., 10. Leyline told consumers that "our long-awaited Realsm [sic] of Kymoria QuickStart Kit Guide is ready to make its way into your hands." Doc. 19, App'x, 1. The website also advertised that the Game Quick Start Kit Guide was produced "by Geek Therapeutics." *Id.*

Because Tabletop Adventure did not address any of the digits of confusion, it has failed to demonstrate a likelihood of consumer confusion, for the same reasons the Court discussed above. *See Est. of Barre v. Carter*, 272 F. Supp. 3d 906, 943 (E.D. La. 2017) (applying the digits of confusion when addressing the merits of a false endorsement claim asserted under the Lanham Act). Accordingly, Tabletop Adventure is unlikely to succeed on its false endorsement claim.

> 3. Tabletop Adventure is Unlikely to Succeed on its Claims Because Leyline Likely Has a Licensing Agreement that Authorizes it to Distribute Content Associated with The Game.

Based on the limited record before the Court, even if Leyline has engaged in conduct that would otherwise constitute copyright and trademark infringement, Tabletop Adventure is still unlikely to succeed on its claims because of the parties' licensing agreement. Possessing a valid license is a defense to claims for copyright infringement, *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012), trademark infringement, *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075 (5th Cir. 1997), and false endorsement.

Tabletop Adventure and Leyline entered two licensing agreements. While the first licensing agreement is no longer in effect, the parties are still bound by the second agreement, which likely allows Leyline to distribute content associated with the Game.

> *i. Leyline and Tabletop Adventure entered two licensing agreements, and the second licensing agreement remains binding on the parties.*

Tabletop Adventure potentially entered two licensing agreements with Leyline. Tabletop Adventure argues that the first agreement is no longer binding because Leyline breached the agreement by not paying Tabletop Adventure. Doc. 29, Reply, 3. At the hearing, Leyline conceded that the first agreement is no operable. Thus, Leyline's license affirmative defense cannot be based on the first agreement. However, the Court finds that that the second licensing agreement is a valid contract that remains binding on the parties.

A license to use someone's intellectual property is a contract, which means "Texas law governs [the Court's] analysis of whether the parties contractually created a . . . license." *Lulirama*

*Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 880 n.7 (5th Cir. 1997).[5] "The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, no pet.). Determining whether there was a meeting of the minds is an objective inquiry, which means that "[u]nexpressed subjective intent is irrelevant." *Id.*

Leyline has established that the second licensing agreement is an enforceable contract. Thomas drafted the second licensing agreement and sent it to Leyline. Doc. 26-2, Ex. 2. Defendant Bean signed and dated the agreement. Doc. 26-2, Ex. 2, 4. Thus, Tabletop Adventure sent Leyline an offer, Leyline accepted the offer, and the parties consented to the proposed terms. *See Bradshaw v. G & T Farms, LLC*, No. 07-16-00217-CV, 2018 WL 415055, at *4 (Tex. App.—Amarillo Jan. 12, 2018, no pet.) (affirming a district court's finding that the parties entered a contract after the defendant signed the contract and returned it to the plaintiff).

There was also a meeting of the minds on the second licensing agreement. Leyline manifested its assent to enter the contract by signing the agreement. Doc. 26-2, Ex. 2, 4. And Tabletop Adventure manifested its assent by both writing the second licensing agreement and performing under it. *See Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (finding that a party accepted the contract by beginning performance). The second licensing agreement required Tabletop Adventure to help Leyline develop "modules" and "rulebooks" for the

---

[5] The parties agree that the contract formation issues are governed by Texas law. *See* Doc. 29, Reply, 3; *see* Doc. 26, Br. Resp., 5.

Game and to help promote the Game. *See* Doc. 26-2, Ex. 2, 1. Tabletop Adventure judicially admitted to beginning performance under the licensing agreement by alleging that Thomas worked with Leyline to "finalize[e] the content of the game." Doc. 1, Compl., ¶¶ 31–34; *see Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings . . . that is binding on the party making them . . . . [I]t has the effect of withdrawing a fact from contention."). Thomas also judicially admitted to helping promote the Game at a trade show. Doc. 1, Compl., ¶ 34; *see Martinez*, 244 F.3d at 476. Therefore, it is undisputed that Tabletop Adventure began performance under the second licensing agreement, which means Tabletop Adventure assented to the contract. *See Mid-Continent Cas. Co.*, 323 S.W.3d at 157.

Tabletop Adventure argues that the parties did not enter a final agreement because Thomas did not sign the second licensing agreement. Doc. 29, Reply, 2. However, under Texas law, "a contract need not be signed by the parties to be executed, and hence binding, unless the parties explicitly require signatures as a condition of their mutual assent." *Chubb Lloyds Ins. Co. of Tex.*, 668 S.W.3d at 151. The licensing agreement does not specify that both parties need to sign it. *See* Doc. 26-2, Ex. 2. Therefore, the Court rejects this argument.

Tabletop Adventure contends that it revoked its offer before Leyline accepted. Doc. 29, Reply, 2. This argument lacks merit. An offer may cannot be revoked after the parties have entered a binding contract. *See Morgan v. Bronze Queen Mgt. Co., LLC*, 474 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The parties had a binding contract once Leyline signed the agreement and Tabletop Adventure began performance. Thus, Tabletop Adventure did not revoke the offer when it sent the cease-and-desist letter because Tabletop Adventure could no longer revoke the offer.

In support of its revocation argument, Tabletop Adventure misinterprets a sentence in a case from the Northern District of Texas. "[T]he offeror of [a contract] is free to revoke its offer unless and until an independent consideration is made." Doc. 29, Reply, 2 (alterations in original) (quoting *Via v. Blanchard*, No. 5:20-CV-170-BQ, 2021 WL 4902391, at *8 (N.D. Tex. July 30, 2021) (Bryant, M.J.)). The original quote is "the offeror of *the option* is free to revoke its offer unless and until an independent consideration is made." *Blanchard*, 2021 WL 4902391, at *8 (emphasis added). The *Blanchard* court was discussing an option contract, which is a secondary contract that "limits the promisor's power to revoke an offer." *Clements Fluids Henderson, Ltd. v. Oakley Fertilizer, Inc.*, No. 6:09-CV-540, 2011 WL 13220826, at *3 (E.D. Tex. July 13, 2011) (citing RESTATEMENT (SECOND) OF CONTRACTS § 25 (1981)). An option contract is a secondary contract that makes a primary offer irrevocable—but the option contract is not enforceable (and thus the primary offer is not irrevocable) until the offeree has provided separate consideration. *See id.* Here, the parties did not enter an option contract, so *Blanchard* is inapposite.

Tabletop Adventure then argues that the parties never formed a contract because Leyline did not provide any consideration. Doc. 29, Reply, 2. This argument also lacks merit. A promise to pay is adequate consideration under Texas law. *See Smith v. Barnhart*, 576 S.W.3d 407, 420 (Tex. App.—Houston 2019, no pet.). The second licensing agreement establishes the rates that Leyline promised to pay Tabletop Adventure for the Game's content. Doc. 26-2, Ex. 2, 2–3. Thus, the second licensing agreement was supported by adequate consideration.

Tabletop Adventure lastly argues that the second licensing agreement is longer in effect because Leyline breached it. *See* Doc. 29, Reply, 3. Under Texas law, when a party materially breaches a contract, the non-breaching party can terminate the contract. *C&C Rd. Constr., Inc. v. SAAB Site*

*Contractors, L.P.*, 574 S.W.3d 576, 585 (Tex. App.—El Paso 2019, no pet.). "The failure to make a complete payment when due under a contract may constitute a material breach." *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 215 (Tex. App.—Houston 2013, pet. denied). Leyline argued in its Reply that Tabletop Adventure breached the licensing agreement by not fulfilling the agreement's payment obligations. Doc. 29, Reply, 3. However, at the hearing, Tabletop Adventure acknowledged that Leyline paid Tabletop Adventure for various consulting services that Tabletop Adventure provided to Leyline in connection with the second licensing agreement. Tabletop Adventure offers no contrary evidence establishing that Leyline materially breached the second licensing agreement. Therefore, the Court concludes that the second licensing agreement remains binding on the parties.

Accordingly, the second licensing agreement is a valid contract, and it is still in effect.

> *ii. The second licensing agreement allows Leyline to distribute Tabletop Adventure's intellectual property.*

The second licensing agreement allows Leyline to distribute Tabletop Adventure's intellectual property. It allows Leyline to "produce, market, and sell the [Game's] content shared with their own branding" and "incorporate this content into a business model that enables them to sell the content, lease the content, or use the content for their own users/clients as needed." Doc. 26-2, Ex. 2, 1–2. This agreement allowed Leyline to sell the content that it purchased from Tabletop Adventure. *Id.* at 2. This content included "rulebooks," "written modules," and "[b]attlemaps and/or scenic illustrations" that Leyline would use to develop the Game. *Id.* at 1. The agreement further explained that Tabletop Adventure "cannot ask [Leyline] to stop selling/using" the content that it purchased. *Id.* at 2.

The second licensing agreement appears to expressly confer on Leyline the right to distribute the Game materials that it developed with Tabletop Adventure. Tabletop Adventure alleges that

Leyline is unlawfully distributing the Quick Start Kit Guide and other content that infringes Tabletop Adventure's intellectual property. *See generally* Doc. 19, Mot. Thus, Leyline received "a license authorizing the use of [the protected] material" at issue in this lawsuit. *See Baisden*, 693 F.3d at 499. Accordingly, even if Tabletop Adventure had proven its claims, it would still be unlikely to succeed on the merits because the second licensing agreement likely authorized Leyline's use of the Game's materials.

Tabletop Adventure argues that, even if a valid contract, the second licensing agreement does not cover the type of content at issue in this lawsuit. It contends that while the second licensing agreement may allow Leyline to sell some content, it does not allow Leyline to distribute the Quick Start Kit Guide or the Game. At the hearing, Tabletop Adventure argued, for the first time, that there are three types of content relevant to this lawsuit: (1) the content that Tabletop Adventure created independently; (2) the content that Leyline and Tabletop Adventure created together; and (3) the content that Leyline created independently. While not addressed in its brief or fully clarified at the hearing, it appears that Tabletop Adventure thinks that the second licensing agreement, at the very most, allows Leyline to distribute some types of content associated with the Game but not all content associated with the Game. The Court presumes that Tabletop Adventure believes that Leyline cannot distribute the first type of content, and Tabletop Adventure believes Leyline is distributing content that falls within the first category.[6] But Tabletop Adventure has presented the Court with no evidence proving that the Game's content can be divided into these three categories.

Tabletop Adventure has not proven what kind of content Leyline has distributed or plans to distribute. Nor has Tabletop Adventure explained why Leyline cannot distribute the Quick Start Kit

---

[6] This lack of clarity is another reason that Tabletop Adventure is not entitled to a preliminary injunction.

Guide or the Game itself. While the Quick Start Kit Guide is not part of the record, Tabletop Adventure argues that Leyline distributed this Guide after this lawsuit was filed. Doc. 19, Mot., 12. However, there is nothing in the record indicating whether this Guide was (1) created independently by Tabletop Adventure, (2) if it was created by both Tabletop Adventure and Leyline, or (3) if Leyline independently created it. Thus, even if the Game's content can be divided into these three categories, Tabletop Adventure has failed to establish which category of content Leyline is distributing. And while Leyline told its customers that it planned on delivering the final version of the Game, there is nothing in the record establishing which category of content the Game itself falls under, either. Therefore, the second licensing agreement appears to allow Leyline to distribute the Game's content, and Tabletop Adventure has failed to establish that the second licensing agreement does not allow Leyline to distribute the content at issue in this lawsuit.

* * *

In sum, Tabletop Adventure has not provided enough evidence to demonstrate that it is substantially likely to succeed on its copyright infringement, trademark infringement, or false endorsement claims. And even if it had, based on the sparse record before the Court, it appears that the parties' second licensing agreement authorized Leyline to distribute the Game's Quick Start Kit Guide. Because Tabletop Adventure has failed to demonstrate a substantial likelihood of success on the merits, the Court will not address the remaining factors of a preliminary injunction.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Tabletop Adventure's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 19).

SO ORDERED.

SIGNED: June 10, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE